IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SIPI METALS CORP, | ) |
| Plaintiff, | ) Case No. 22 C 4215 |
| v. | ) Judge Robert W. Gettleman |
| ARANSAS PASS PRECIOUS METAL RECOVERY LLC, NAR LAKELAND LLC, ALPER SALTOS, and DYLAN ARMAN | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Sipi Metals Corp. has brought a three-count amended complaint against defendants Aransas Pass Precious Metal Recovery, LLC, NAR Lakeland, LLC, Alper Saltos, and Dylan Arman, alleging breach of contract against NAR (Count 1) and Aransas (Count 2), and fraud against all defendants (Count 3). Defendants have moved to dismiss Counts 1 and 2 under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, and to dismiss Count 3 for failure to plead fraud with particularity as required by Fed. R. Civ. P. 9(b). For the following reasons defendants' motion is denied.

**BACKGROUND[1]**

Plaintiff melts batches of scrap metal to recover precious metals contained therein. Customers deliver their scrap to plaintiff, which analyzes it to determine the precious metal content. Plaintiff then assigns the batch a value and pays the customer that dollar amount less service charges. Sometimes customers take payment in advance. In such a case, the customer

---

[1] The background facts are taken from the complaint and are assumed true for purposes of resolving the instant motion. Alam v. Miller Brewing Co., 709 F.3d 662, 665-66 (7th Cir. 2013).

estimates a batch's value before delivery. Plaintiff then advances at least a portion of that value to the customer. When the batch arrives, plaintiff values the precious metal content as usual. If the value exceeds the advance, the customer gets the difference. If the value is less than the advance, the customer owes plaintiff the amount of the shortfall. This scenario is known as an "aging balance."

Plaintiff first began to work with defendants Saltos and Arman when they were operating NAR, which is defendant Aransas's predecessor in interest. NAR is also a scrap metal purveyor. NAR became plaintiff's formal customer around October 6, 2019, when it entered a "New Customer Form. The relationship started well, with NAR receiving advances from plaintiff for certain batches that were then analyzed by plaintiff, with a resulting addition payment from plaintiff to NAR. Eventually, however, material from NAR began to fall behind its anticipated and represented content, with NAR receiving advances for materials that, once received and processed, fell short of their represented quantity and/or quality, resulting in an aging balance. Each time a lot fell short, NAR and Saltos would promise that the next lot would more than make up for the shortfall. Yet the negative balance continued to grow and by August 25, 2020, NAR had a negative balance of $257,918.89 for advances paid on materials that did not meet NAR's representations either as to quantity or quality once received and processed.

On August 25, 2020, Saltos informed plaintiff in a WhatsApp chat that NAR "opened a new company for texas and registered to texas. . . . so we can continue from there." In response plaintiff noted that NAR's aging balance would need to be addressed first. Saltos responded that "you can combine them, it is not a problem, you can decrease all from the new account, just a simple contract probably, so we can transfer the aging balance to the new company." [cleaned up]. On September 8, 2020, Saltos informed plaintiff that the transfer of business and aging

2

balance to Aransas "can start from today, the partnership is all the same." Aransas completed a New Customer Form and credit application containing terms and conditions. In addition, plaintiff issued two refining proposals that were to govern the terms of the relationship between the companies. Those refining proposals provide that "In the event that an Advance is granted against any delivered materials (lots), and the resulting final settlements yield a Balance Due Sipi, said balance due MUST be remitted to SIPI by NAR within 15 Business Days via wire."

The parties continued to do business, intermingling NAR and Aransas's busiess names, accounts, and emails. Saltos would in both written and oral communications indicate that loads were coming from Aransas, although the materials were settled through the NAR name and bank accounts at Saltos's request. NAR/Aransas continued to issue invoices to plaintiff for lots, comingling the entities and businesses, until March 2021, when Saltos began to solely use the Aransas name and entity for all dealings with plaintiff.

As of March 11, 2021, Aransas had a negative balance of approximately $392,495.26. The following month, in furtherance of their agreement to satisfy the NAR/Aransas outstanding balance with further shipments from Aransas, the parties agreed to Refining Proposal #C8676 for "AB [Aging Balance] Trucks," which provided for plaintiff "to retain all proceeds until outstanding Aging Balance reaches zero."

With each new load shipped, defendants would provide documentation and photographs showing that the material to be shipped was different and/or significantly more valuable than it ultimately proved to be. Relying on defendants' representations, plaintiff would advance defendants money for the lots.

On June 2-4, 2021, plaintiff's customer service representative met, Joe Opron, with defendant at Aransas's Texas facility. Specifically, Opron and Arman together inspected and

balance to Aransas "can start from today, the partnership is all the same." Aransas completed a New Customer Form and credit application containing terms and conditions. In addition, plaintiff issued two refining proposals that were to govern the terms of the relationship between the companies. Those refining proposals provide that "In the event that an Advance is granted against any delivered materials (lots), and the resulting final settlements yield a Balance Due Sipi, said balance due MUST be remitted to SIPI by NAR within 15 Business Days via wire."

The parties continued to do business, intermingling NAR and Aransas's busiess names, accounts, and emails. Saltos would in both written and oral communications indicate that loads were coming from Aransas, although the materials were settled through the NAR name and bank accounts at Saltos's request. NAR/Aransas continued to issue invoices to plaintiff for lots, comingling the entities and businesses, until March 2021, when Saltos began to solely use the Aransas name and entity for all dealings with plaintiff.

As of March 11, 2021, Aransas had a negative balance of approximately $392,495.26. The following month, in furtherance of their agreement to satisfy the NAR/Aransas outstanding balance with further shipments from Aransas, the parties agreed to Refining Proposal #C8676 for "AB [Aging Balance] Trucks," which provided for plaintiff "to retain all proceeds until outstanding Aging Balance reaches zero."

With each new load shipped, defendants would provide documentation and photographs showing that the material to be shipped was different and/or significantly more valuable than it ultimately proved to be. Relying on defendants' representations, plaintiff would advance defendants money for the lots.

On June 2-4, 2021, plaintiff's customer service representative met, Joe Opron, with defendant at Aransas's Texas facility. Specifically, Opron and Arman together inspected and

assessed the value of materials located at the facility. Arman and Saltos identified specific materials they agreed to ship to plaintiff to satisfy the outstanding aging balance, and made representations that all further shipments would meet agreed upon minimum quality and quantity standards. Defendants never shipped these materials, however, instead shipping different materials of significantly lesser value. Also at the meeting, Saltos and Arman agreed that Aransas would sell off a large amount of material identified by the parties and forward the proceeds to plaintiff to pay off the aging balance. Defendants never performed this promise.

Aransas did ship several lots of additional material to plaintiff, but it was not the material identified at the meeting, and it did not meet Aransas's quality and quantity representations. The parties continued to negotiate a resolution, and Aransas agreed to make some minimal payments on the aging balance, but it ceased making any payments as of August 25, 2021.

## DISCUSSION

Defendants have moved to dismiss Counts 1 and 2 under Fed. R. Civ. P. 12(b)(6) for failing to state a claim and Count 3 under Fed. R. Civ. P. 9(b) for failing to plead fraud with particularity. To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient factual matter to state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). For a claim to have "facial plausibility," a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Allegations of fraud, like those contained in Count 3, must satisfy the heightened pleading standard of Rule 9(b), and "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The rule requires the

complaint to set out the who, what, when, where, and how of the alleged fraud. United States ex rel. Presser v. Acacia Mental Health Clinic, LLC, 836 F.3d 770, 776 (7th Cir. 2016).

Defendants first argue that Counts 1 and 2 fail to state claims for breach of contract. Specifically, they argue that plaintiff has failed to plead a valid contract by failing to plead acceptance. To state a claim for breach of contract under Illinois law, plaintiff must plead: 1) an offer; 2) acceptance of the offer; and 3) consideration. VC Management v. Reliastar Life Ins. Co., 195 F. Supp. 3d 974, 984 (N. D. Ill. 2016) (applying Illinois law). Acceptance requires the offeree to manifest its assent to the offer's essential terms. Martin v. Government Employees Ins. Co., 206 Ill. App. 3d 1031, 1040 (1st. Dist. 1990).

Defendants argue that the complaint contains only conclusory allegations that defendants accepted the December Refining Proposals. The court disagrees. The complaint, which is more detailed than many federal complaints, alleges that defendants explicitly accepted the terms of the proposals by texts and email affirmations by both Saltos and Arman to Opron and plaintiff's executive Vice President Len Stack. That allegation alone is sufficient for the court to infer that defendants accepted the terms. The same is true for the allegations in Count 2. Paragraph 80 alleges that "in exchange for valuable consideration, including the continued business relationship, Aransas agreed to assume all outstanding debts of the NAR Electronics Account and to continue to conduct business with Sipi pursuant to the terms of Refining Proposals #C8267 and #C8268." Paragraph 81 alleges that "such agreement was evidenced by way of text and e-mail affirmations made from Alper Saltos and Dylan Arman to Sipi corporate representatives Joe Opron, . . , and Len Stack. . .." These allegations are sufficiently detailed to plausibly allege acceptance of the terms.

As to the fraud allegations in Count 3, paragraphs 97 -113 set out the required who, what, when, where, and how of the alleged fraud. For example, paragraph 98 alleges that from at least August 25, 2021, to September 2021, Saltos, Arman and NAR misrepresented in multiple texts and e-mails to Opron and Stack as well as in the paperwork and photographs submitted with each lot and represented that those listed lots were more valuable than they actually were. The following paragraphs describe how Saltos and Arman made false statements and misrepresented the actual physical contents of the materials, the volume of materials, and the quality of the materials shipped to plaintiff. Paragraph 100 describes a "bait and switch" scheme used and directed by Saltos and Arman to defraud plaintiff. These allegations both satisfy Rule 9(b), and plausibly allege fraud. Consequently, the court rejects defendants' argument that the complaint contains conclusory allegations only and denies defendants' motion to dismiss.

## CONCLUSION

For the reasons described above, the court denied defendants' motion to dismiss [46]. Defendants are directed to answer the amended complaint by August 2, 2023. The parties are directed to file a joint status report, on this court's form, by August 9, 2023.

ENTER:

**Robert W. Gettleman**
**United States District Judge**

**DATE: July 5, 2023**